**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

GILBERTO VILLANUEVA,

Petitioner,

v.

THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, *et al.*,

Respondents.

Civil Action No. 25-13364 (MAS)

**OPINION**

**SHIPP, District Judge**

This matter comes before the Court on the amended petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 filed by Petitioner Gilberto Villanueva ("Petitioner"). (ECF No. 2.) Following an order to answer, Respondents filed an answer to the amended petition. (ECF No. 10.) Petitioner did not file a timely reply. For the following reasons, the amended petition shall be denied and Petitioner shall be denied a certificate of appealability.

## I. BACKGROUND

In its opinion affirming Petitioner's conviction and sentence, the Superior Court of New Jersey, Appellate Division, summarized the factual background of Petitioner's convictions as follows:

> In 2014, a grand jury charged [Petitioner] with . . . first-degree murder[,] first-degree felony murder[,] second-degree burglary[,] first-degree criminal attempt[ed] murder[,] third-degree possession of a weapon for [an] unlawful purpose[,] and . . . fourth-degree unlawful possession of a weapon[.] During pretrial proceedings, the trial court denied [Petitioner]'s motion to exclude statements he made to police during interrogation. The court further granted the

State's motion to admit text messages [Petitioner] sent to his ex-girlfriend, K.D. (["Karen"]), . . . and evidence of a domestic violence incident involving the couple.

Following a six-day trial, a jury found [Petitioner] guilty on all counts. The judge sentenced [Petitioner] to an aggregate [of] sixty years in prison, subject to [a significant parole ineligibility term].

. . . .

. . . On October 27, 2013, Karen and [Petitioner], her boyfriend at the time, had an argument that ended with [Petitioner] hitting Karen in the face. [Petitioner] told Karen "he was the devil," and threatened he "would hurt [Karen] and [her] family." Karen called the police, and the police charged [Petitioner] with simple assault, criminal mischief, and obstructing justice. [Petitioner] pled guilty to [the] simple assault charge [and may also have pled guilty to the two remaining charges.]

The following day, [Petitioner] told Karen he had been drunk the night before, and accidentally hit her. Karen ended the relationship, but the two continued to exchange text messages. Eventually, the text messages became threatening, and Karen feared for her family's safety.

On November 13, 2013, [Petitioner] texted Karen, requesting to sleep at her home. Karen repeatedly told [Petitioner] that she did not wish to see him. [Petitioner] also called Karen four times, but she did not respond.

Around 9:00 p.m. the same day, Karen and her mother [Sara] went upstairs to put Karen's daughter and nephew to bed. Around 10:30 p.m., [Petitioner] entered Karen's bedroom with a screwdriver. Karen ordered [Petitioner] to leave. [Petitioner] initially ignored her command, but eventually dropped the screwdriver.

Sara entered Karen's bedroom, and also demanded [Petitioner] leave. Sara then told Karen to remain upstairs while she escorted [Petitioner] to the front door. Karen ran downstairs when she heard her mother scream. She saw [Petitioner]'s hand thrusting towards her mother and "[i]t appeared as if he was punching her." Karen tried to intervene, but when [Petitioner] turned around, she saw he had "a bloody knife in his hand." Karen further testified,

> when I pushed him, he stabbed me twice in my hip. I fell onto my knees. He stabbed me twice in my back. And when I tried to get up, he went to stab me

> in my heart, but I put my arm up in defense and the blade went into my forearm. And I tried to scramble up to catch my balance and I looked over any my mom was laid out on the floor completely unconscious at this point.

Subsequently, [Petitioner] asked Karen for her car keys, and she lied, telling him the keys were in the living room. When [Petitioner] went to get the keys, Karen escaped and ran towards her neighbor's house. [Petitioner] ran after Karen, but fled when she began screaming. The neighbor then called the police.

First responders transported Sara to Cooper Hospital, where she died at 11:21 p.m. Karen went to the same hospital, where she received treatment for stab wounds to her neck (near her carotid artery), collar bone, both sides of her abdomen, and defensive wounds on her arms.

Merchantville police officer, Sergeant Greg Miller went to the crime scene at 10:34 p.m. While there, he received a report that the Camden City police had a suspect – later identified as [Petitioner] – in custody at [Our] Lady of Lourdes Hospital. [Petitioner] had a knife wound in his hand.

Sergeant Miller arrived at the hospital around midnight, November 14, 2013, and took custody of [Petitioner]. At that point, [Petitioner] was sleeping and handcuffed to a gurney. Around 5:30-6:00 a.m., [Petitioner] woke up, and a doctor stitched his hand. At some point during [Petitioner]'s stay at the hospital, staff gave him Ativan and Haldol because he was "combative."

Around 6:00 a.m., Sergeant Miller transported [Petitioner] to the Camden County Prosecutor's Office for processing. Upon leaving the hospital, [Petitioner] could walk on his own, and neither stumbled nor leaned on anyone for support. Sergeant Miler further testified, based upon his experience with "hundreds" of intoxicated individuals, that [Petitioner] appeared oriented, alert, and not intoxicated.

Also on November 14, 2013, a neighbor of the victims found a knife and believed it may have been involved in the homicide; the neighbor called police who retrieved the knife. A lab technician found both [Petitioner]'s and Karen's DNA on the knife.

That same day, a medical examiner performed an autopsy on Sara. He noted she had "seven stab and incise wounds." One stab wound was around four inches deep and struck Sara's lung and aorta. He opined [that] this caused massive bleeding and rapid death. Sara

also had a stab wound to her stomach, which he believed could also have caused death, either from bleeding or infection. The medical examiner further opined Sara died from the stab wound to her aorta, and no other preexisting injuries or disease contributed to her death.

On November 14, 2013, at around 2:00 a.m., [Petitioner]'s sister Nancy provided a statement to the police, which the judge permitted the State to play for the jury. In her statement, Nancy told police her brother called her on the night of the homicide. He stated "he was hurt," "bleeding," "dying," and "wanted to die." When Nancy found [Petitioner], he was bleeding, and told her that he "and [Karen] got in a sword fight." He also said "something about stabbing [Karen and her mom] in the lung." Nancy explained [Petitioner] "was drunk" and he "drinks a lot, a lot." Nancy took [Petitioner] to the hospital, where police ultimately apprehended him.

Detective Peter Longo, who interrogated [Petitioner], testified at the pretrial suppression hearing. He stated that at the interrogation, [Petitioner] appeared "tired," "evasive," and "cautious." He further testified he read [Petitioner] his [rights under *Miranda v. Arizona*, 384 U.S. 436 (1966),] and [Petitioner] signed the *Miranda* form. The detective stated [Petitioner] did not appear intoxicated or under the influence of drugs during the interrogation, and [Petitioner] was able to maintain a coherent conversation. However, he also acknowledged that during the interrogation, he had to ask [Petitioner] to stay awake, sit up, and repeat himself.

. . . .

. . . the [trial] judge thoroughly considered the totality of the circumstances, including [Petitioner]'s prior history with law enforcement, his ability to coherently converse with Detective Longo, and Detective Longo's testimony that [Petitioner] did not appear intoxicated. [The judge found that Petitioner] remained capable of conversing and lacked indicia of intoxication despite receiving two drugs before the interrogation and his alleged hangover [and noted that] [Petitioner was] engaged, inquisitive, and "animated" during the interrogation[, and found Petitioner had knowingly and voluntarily waived his rights under *Miranda*, and admitted his statement to the police into evidence at trial.]

(ECF No. 10-13 at 2- 11.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the]

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

### A. Petitioner's *Miranda* Claim

In his habeas petition, Petitioner first raises a claim in which he asserts that the admission of his statement to police at trial violated his rights under *Miranda* and its progeny. He believes his waiver of his rights was not knowing, intelligent, or voluntary, in light of his drinking and being medicated prior to being taken into custody. The Appellate Division rejected this claim on direct appeal. It found that, having considered the totality of the circumstances, Petitioner did not appear to be intoxicated at the time of the interrogation and engaged in a pattern of actions during questioning, indicating that he was adequately engaged and sufficiently aware that it was clear from the record that Petitioner had made a knowing and voluntary decision in choosing to waive his rights and speak to police.

Under the constitutional structure established in *Miranda* and its progeny, a statement made by a defendant during a custodial interrogation is inadmissible at trial unless the defendant is advised of his rights—that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that an attorney will be appointed for him prior to questioning if he so chooses—and "in fact knowingly and voluntarily waived [these] rights." *Berghuis v. Thompkins*, 560 U.S. 370, 380-82 (2010). Under the *Miranda* rule, to preserve the admissibility of a defendant's statements, police must cease questioning where one of these rights is invoked, but only where that invocation is unambiguous. *Id.* at 381-82. So long as there is no unambiguous invocation of the right to silence or the right to counsel, a statement will be admissible as long as the record indicates that the defendant knew the nature of the right he was choosing to waive and voluntarily chose to forgo that right. *Id.* at 381-83. Waiver need not be

made expressly or in writing, but need only be implicitly clear from the defendant's actions. *Id.* at 384.

The Appellate Division's rejection of Petitioner's *Miranda* claim was neither contrary to nor an unreasonable application of applicable federal law. Although Petitioner had been drinking the prior evening and was provided with medications that could have affected his mental state several hours before he was intoxicated, the testimony in the record indicates that Petitioner was awake, aware, and at times quite animated during his interrogation. Nothing in the record of the interrogation or Petitioner's waiver of his *Miranda* rights during that process shows that Petitioner's choice was anything other than knowing, intelligent and voluntary. As the totality of the circumstances supports the Appellate Division's conclusions, the admission of Petitioner's statement was in line with federal law and serves as no basis for habeas relief.

Putting aside the merits of Petitioner's claims, the Court notes that the admission of Petitioner's statement was also likely harmless in this case. In a habeas proceeding, errors of even a constitutional dimension will be considered harmless and provide no basis for relief unless they had a substantial and injurious effect upon the outcome of the petitioner's trial. *Fry v. Pliler*, 551 U.S. 112, 115-16 (2007). Even without his statement to police, the trial record contains the testimony of the surviving victim as well as DNA and physical evidence that directly tied Petitioner to the knife used in the attack upon the surviving victim and her mother. The record also contains evidence of prior threats, as well as Petitioner's statement to his sister that he had gotten into a "sword fight" with the victim and stabbed both victims in the process. Given this considerable evidence of Petitioner's guilt, it is doubtful that the admission of Petitioner's statement to police had a substantial and injurious effect on the outcome of Petitioner's trial. Thus, it is doubtful that this claim could serve as a basis for habeas relief even if it had amounted to a violation of the rules set forth in *Miranda* and its progeny.

### B. Petitioner's Prior Bad Acts Claim

Petitioner next argues that the state courts erred in admitting testimony regarding the prior domestic violence incident between himself and Karen, and that that testimony amounted to improper prior bad acts testimony. The Appellate Division rejected this claim on direct appeal and found that the facts and circumstances of the prior incident and resulting assault conviction were admissible as they were highly relevant to Petitioner's motive, intent, and lack of accident or mistake in committing the attack upon the two victims. The Appellate Division also found that any prejudice from the admission of the testimony was obviated by the limiting instruction provided by the trial court.

The Supreme Court has never held that evidence of prior bad acts—even when they amount to other crimes—must be excluded from criminal trials, nor that a curative instruction or other restriction is per se required for a criminal conviction to survive constitutional scrutiny where such evidence is admitted. *See generally Estelle*, 502 U.S. 62; *Greer v. Miller*, 483 U.S. 756 (1987); *Spencer v. Texas*, 385 U.S. 554 (1967); *see also Minett v. Hendricks*, 135 F. App'x 547, 553 (2005). As with most state court evidentiary decisions, the admission of such evidence will only warrant habeas relief where the admission of the evidence was so unduly prejudicial that it rendered the petitioner's trial fundamentally unfair. *Glenn*, 743 F.3d at 407; *Minett*, 135 F. App'x at 553.

The state courts' admission of the prior domestic violence incident at Petitioner's trial did not have the capacity to render Petitioner's trial fundamentally unfair, especially in light of the considerable evidence of Petitioner's guilt produced at trial and the trial court's provision of a limiting instruction to the jury that it could only consider the prior incident for appropriate purposes. The prior incident—and especially the threat Petitioner made during the prior incident—was highly relevant to Petitioner's guilt of the attack on Karen and her mother, and was especially

relevant to showing Petitioner's intentions, and that his entry into Karen's home and attack upon Karen and her mother were not a mistake or accident. Given the clear relevance of the evidence, the trial court's limiting instruction prohibiting the consideration of the prior incident for propensity purposes, and the overwhelming evidence of Petitioner's guilt presented at his trial, the decision of the state courts to admit that evidence was neither contrary to nor an unreasonable application of federal law. Petitioner's prior bad acts claim thus serves as no basis for habeas relief.

### C. Petitioner's Ineffective Assistance of Counsel Claims

In his final series of claims, Petitioner asserts that he suffered ineffective assistance of counsel at trial and on direct appeal. The standard applicable to claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the

> wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Petitioner first argues that his counsel proved ineffective in failing to provide an expert witness as to intoxication at his *Miranda* hearing. The Appellate Division rejected this claim in deciding Petitioner's appeal from the denial of his PCR petition. The Appellate Division noted that the PCR trial judge had found that the expert witness Petitioner provided was willing to opine only that Petitioner may have had "minimal impairment" during the interrogation, and that such testimony would not be sufficient to warrant the suppression of Petitioner's statement. That decision was neither contrary to nor an unreasonable application of federal law. As noted by the state courts, Petitioner's proffered expert was at most willing to assert that Petitioner may have been minimally impaired at the time of his interrogation, an assertion that would not be sufficient to overcome the remaining evidence that showed that Petitioner was aware, and sufficiently alert

and engaged such that his waiver of his rights was knowing and voluntary. As the expert's testimony would not have affected the outcome of the *Miranda* hearing, Petitioner was not prejudiced by the failure to call such an expert, and Petitioner's first ineffective assistance of counsel claim serves as no basis for habeas relief.

Petitioner next asserts that trial counsel proved ineffective in failing to request a jury instruction as to intoxication. The Appellate Division rejected this claim, finding, as did the trial level PCR judge, that the facts in Petitioner's case did not sufficiently support the entry of an intoxication instruction at trial as there was insufficient evidence at trial sufficient to indicate that Petitioner was so intoxicated that it could have prevented him from having the necessary mental state to support a conviction for murder. Thus, there was no basis in state law for providing such a charge in this case. As there was no basis for such an instruction under state law given the facts of Petitioner's case, any request for such a charge at trial would have been meritless. Because counsel cannot be ineffective for failing to press a meritless claim or argument, *see United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) (counsel cannot be ineffective in failing to raise a meritless objection); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (same), Petitioner's intoxication instruction claim serves as no basis for habeas relief.

Petitioner next contends that counsel proved ineffective in failing to sufficiently argue that law enforcement failed to adequately inform Petitioner of the serious charges he faced prior to his interrogation, resulting in his waiver of his rights being less than knowing or voluntary. The state courts rejected Petitioner's claims challenging counsel's alleged failings related to his statement to the police by finding that Petitioner could not show prejudice as Petitioner's statement to the police was far less incriminating than the other overwhelming evidence of Petitioner's guilt produced at trial. Petitioner therefore would have been convicted even had his statement been suppressed. This decision was neither contrary to nor an unreasonable application of *Strickland*.

The evidence against Petitioner at trial—including the testimony of the surviving victim, Petitioner's statements to his sister, and the DNA evidence tying Petitioner to the knife he used in the attack—was significant. Had Petitioner's statement to the police been suppressed, there is no reasonable likelihood that the outcome of his trial would have been different. Petitioner therefore cannot show prejudice and his ineffective assistance claims related to the admission of his statement thus serve as no basis for habeas relief.

Petitioner next argues that counsel failed to adequately inform him of his sentencing exposure should he proceed to trial, resulting in him rejecting a plea offer. The state courts rejected this claim, finding that Petitioner had received multiple pre-trial hearings during which the possibility of a plea agreement had been discussed and explained, and during which Petitioner had been provided clear information as to the state's plea offers. The PCR trial court also noted that Petitioner had not given counsel authority to resolve the plea negotiations through a counter-offer, and that counsel had acted reasonably in regards to plea negotiations.

The state court plea cut-off hearing indicates that the state initially offered Petitioner a plea deal of thirty years for the murder charge and a consecutive eighteen year sentence for attempted murder. (ECF No. 10-49 at 3.) Petitioner rejected that offer and instead sought a twenty-five-year sentence, which the state rejected. (*Id.*) During that hearing, Petitioner was directly informed that he faced a sentence of up to life on the murder charge, as well as a further consecutive sentence of ten to twenty years on the attempted murder charge. (*Id.* at 4.) Petitioner was thereafter given an extension of time to consider the state's offer. (*Id.*) At the next hearing, Petitioner was again directly informed by the trial court that he faced a total sentence of up to life plus a consecutive twenty-year sentence, but Petitioner was still not interested in the state's offer. Petitioner, however, was given a final opportunity to decide whether he wished to accept a plea. (ECF No. 10-50 at 4.) At a follow-up hearing, Petitioner was still not interested in the state's offer, and was

only interested in a plea of twenty or twenty five years. (ECF No. 10-51 at 4.) Petitioner was once again informed of his maximum exposure, but was still not willing to accept a plea deal of greater than twenty five years' imprisonment. (*Id.* at 4-5.) Petitioner did not accept the state's offer or make a counter-offer acceptable to the state, and no plea deal was ever reached.

As the state courts noted, the record clearly establishes that Petitioner was explicitly told that he faced the possibility of a life and a consecutive twenty-year sentence, and that it was made abundantly clear to Petitioner that consecutive sentences were a very real possibility if he lost at trial. The record thus refutes Petitioner's assertions that he was not properly provided with his sentencing exposure and shows that a plea deal did not happen because Petitioner was unwilling to accept a deal for over twenty-five years, a number to which the state would not agree. Because Petitioner was provided with the information he alleges he lacked, and it is clear that the failure to reach a plea deal was the result of Petitioner's unwillingness to accept a sentence to which the state would agree, he cannot show that he was prejudiced by any failing on counsel's part. In any event, Petitioner has failed to show that counsel proved ineffective in not providing him information which was made clear to him during several plea cut-off hearings. This claim is therefore without merit, and serves as no basis for habeas relief.

In his next claim, Petitioner asserts that counsel proved ineffective in agreeing to a stipulation regarding the witness who discovered the knife following Petitioner's flight. This stipulation essentially stated that the witness in question had found the knife and turned it into police and had "do[ne] his citizen's duty" in doing so. (*See* ECF No. 10-36 at 12.) The parties agreed to this stipulation at trial as the witness was no longer present in New Jersey, and had he been called his testimony would have been brief and would have covered the same points. Petitioner now believes that this stipulation prevented him from confronting the witness through

cross examination, including as to his criminal history.[1] The Appellate Division rejected this claim, as the stipulated statement was unbiased, and Petitioner could not show that he was prejudiced by counsel agreeing to the stipulation rather than forcing the witness to return for trial. Given the strong evidence of Petitioner's guilt, and the fact that DNA evidence established the knife in question to be the one Petitioner used to stab his former girlfriend and by which he was cut, there was essentially no value regarding cross examination of this witness, who did no more than find the knife. Challenging his credibility would not have had any likelihood of affecting the outcome of Petitioner's trial, and Petitioner therefore cannot show that he was prejudiced by counsel agreeing to the stipulation. This ground thus serves as no basis for habeas relief.

Petitioner also asserts that his appellate attorneys proved ineffective in failing to raise all of the claims he wished to present. The Appellate Division rejected this claim on the merits, finding that counsel's choice of which claims to raise on appeal was a "reasonable litigation strategy" focusing on presenting "appropriate and meritorious" arguments. (ECF No. 10-36 at 13, 16-17.)

While appellate counsel's decisions are subject review under the *Strickland* standard, *see Smith v. Robbins*, 528 U.S. 259, 285 (2000), "it is a well established principle that counsel decides which issues to pursue on appeal," *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)), and appellate counsel need not raise every nonfrivolous claim a defendant wishes to pursue. *Barnes*, 463 U.S. at 751. As the chief component

---

[1] Petitioner also asserts that trial counsel was ineffective in fully investigating the absent witness who was the subject of the stipulation and in failing to fully appreciate the witness's criminal history. As discussed above, however, the witness's testimony was limited to the discovery of the knife, and, in light of the overwhelming evidence of Petitioner's guilt presented at trial, there is no reasonable likelihood of a different outcome had counsel more thoroughly investigated, called, or sought to question the credibility of this witness. Petitioner's investigation claim therefore also fails to establish any prejudice and fails to state a basis for habeas relief.

of effective appellate advocacy is the winnowing out of weaker claims in favor of those with a greater chance of success, *id.* at 751-52; *Smith v. Murray*, 477 U.S. 527, 536 (1986), the Supreme Court has held that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *See Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Because Petitioner has failed to show that any of the claims he now wishes to raise had been raised on appeal were stronger than those counsel chose to pursue, and the issues counsel chose to pursue were reasonable under the circumstances, Petitioner fails to show that he was prejudiced by appellate counsel's choices. The state courts' decisions were thus neither contrary to nor an unreasonable application of federal law, and this claim serves as no basis for habeas relief.

Finally, Petitioner asserts that he also wishes to "submit his other ineffective assistance of counsel claims" presented in his PCR petition and on appeal from the denial of the PCR petition. Those claims include the following: (1) counsel failed to investigate and call a number of witnesses who could have testified that Petitioner had been intoxicated earlier during the night of the attack; (2) counsel proved ineffective in failing to reschedule a February 2015 pretrial conference; (3) counsel failed to argue against consecutive sentences on the ground that the attacks on the two victims were really a single event; (4) trial counsel and appellate counsel failed to argue that the prosecutor had a duty to correct alleged false testimony; (5) trial counsel failed to provide testimony indicating that the victim had dropped a restraining order prior to the attack; (6) counsel failed to appropriately challenge the initial criminal complaint; and (7) the cumulative failures of counsel constitute a basis for relief. (*See* ECF No. 10-32.) The Appellate Division rejected all of these claims as meritless.

In his habeas petition, Petitioner provides no arguments in support of these claims. He submits no certifications or other proof of what the alleged witnesses would have testified to had

they been called at trial and provides no basis for finding that he was in any way prejudiced by the missed pretrial conference. Petitioner fails to show that the prosecutor in any way knowingly suborned perjury or even that the statements of the victim during trial were false rather than merely different from Petitioner's version of events. Petitioner fails to show that the prosecutor at trial committed improper vouching, fails to show that the information regarding the dropped restraining order would have in any way undermined the strong evidence of his guilt at trial, and fails to show that further argument would have likely resulted in concurrent rather than consecutive sentences.[2] Petitioner also fails to show that any deficiency in the criminal complaint against him was sufficient to have affected the outcome of his case. Petitioner has thus not provided any clear evidence of prejudice in relation to the claims he now seeks to incorporate by reference.

In light of the considerable evidence of Petitioner's guilt presented at trial, and the lack of any clear evidence of prejudice provided by Petitioner, the Court cannot find that the state courts' rejection of these claims as meritless was contrary to or an unreasonable application of *Strickland* and its progeny. Likewise, Petitioner's claims of cumulative prejudice similarly must fail. Even considering the claims cumulatively, Petitioner cannot show that he was prejudiced in light of the strong evidence of his guilt provided at trial. Petitioner's incorporated claims, therefore, serve as no basis for habeas relief. Because Petitioner has failed to show any basis for relief, his amended habeas petition is denied.

## IV. <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has

[2] The Court notes that the PCR judge and Appellate Division both noted that consecutive sentences were supported by the record and were thus proper under state law, and that counsel had, in fact, argued against consecutive sentences during sentencing. (ECF No. 10-36 at 13-14.)

"made a substantial showing of the denial of a constitutional right." "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are all without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. The Court therefore denies Petitioner a certificate of appealability.

## V. CONCLUSION

Petitioner's amended habeas petition (ECF No. 2) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: October 13, 2026